UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DOMINIQUE WHITFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:21 CV 258 MTS |
| | ) | |
| ASHLEY A. HORBIN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

Self-represented plaintiff Dominique Whitfield brings this action under 42 U.S.C. § 1983 for alleged violations of his civil rights. Now before the Court is Plaintiff's Motion to Leave to proceed *in forma pauperis*, or without prepayment of the required filing fees and costs. Doc. [4]. Having reviewed the motion and the financial information submitted in support, the Court will grant the motion and assess an initial partial filing fee of $3.03. *See* 28 U.S.C. § 1915(b)(1). Furthermore, after reviewing the complaint, the Court will dismiss this matter for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B). As such, Plaintiff's motion for appointment of counsel will be denied as moot. *See* Doc. [2].

**Initial Partial Filing Fee**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28

U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff has submitted an application to proceed in this Court without prepaying fees or costs. Doc. [4]. In his application, Plaintiff states that he has no job, no income, no assets, and no money in his prison account. *Id.* at 1-2. However, Plaintiff also submitted a certified inmate account statement showing average monthly deposits of $15.17 over a six-month period. Doc. [6]. The Court finds that Plaintiff has insufficient funds in his prison account to pay the entire fee and will therefore assess an initial partial filing fee of $3.03, which is twenty percent of Plaintiff's average monthly deposit.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the court may dismiss a complaint filed *in forma pauperis* if the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and it liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the court should construe the plaintiff's complaint in a way that permits the claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented plaintiffs are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

**The Complaint and Supplements**

Self-represented Plaintiff is a convicted and sentenced state prisoner at Eastern Reception, Diagnostic & Correctional Center ("ERDCC") in Bonne Terre, Missouri. Plaintiff brings this action under 42 U.S.C. § 1983, alleging violations of his civil rights against three employees at ERDCC: (1) Ashley A. Horbin (correctional officer); (2) Logan R. Robinson (correctional officer); and (3) Dalton LaRue (sergeant). Doc. [1] at 1. Plaintiff brings his claims against Defendants Horbin and Robinson in both their individual and official capacities, but he does not specify the capacity in which he brings his claims against Defendant LaRue. *Id.* at 2-3.

Plaintiff's complete 'Statement of Claim' is as follows:

> I was assaulted by correctional staff members on June 8th, 2020 around 9:00 – 10:00 p.m. This took place in housing unit 5C in the middle of the wing on camera. I suffered a broken nose, also a fractured jaw. I suffered head trauma[,] multiple scars all over my body[,] as well as neck & back pain & abrasions. I suffered two black eyes which left me blind for weeks. I suffered threw [sic] this whole ordeal with a broken finger [] which forced my surgery. C.O's Robinson & Horbin lead the assault on my person, in which C.O. Horbin failed to protect a offender or report offender abuse as she was the reason for my assault. I was later bumrushed & jumped on by Sargeant LaRue & at least 8 other (C.O.'s) staff members that I was able to see. I also suffered harsh confinement as well as neglect of my rights to due process, as staff falsified documents.

*Id.* at 3.

As a result of this incident, Plaintiff states that he suffers from: eye injuries "which are not getting any better;" head trauma that causes "brain popping migraines;" unspecified neck and back trauma; a broken nose and finger;[1] and a fractured jaw line. *Id.* at 4. Plaintiff reports that he had to have surgery on his jaw and finger, but that he continues to have pain which is going unrelieved despite "constant complaints" to medical staff. *Id.* For relief, Plaintiff seeks three (3) million dollars in damages. He also requests that Defendant Robinson lose his badge and be incarcerated, and that all three defendants be "banned from [the] Department of Corrections." *Id.* at 5.

Since the filing of his complaint in this matter, Plaintiff has filed two additional supplements.[2] *See* Docs. [5], [7]. In April 2021, Plaintiff sought to include some "documentation & proof" in his case file, which he described as "documentation of [his] IRR Process." Doc. [5] at 1. However, it is unclear if all included documents are grievance filings that were actually submitted by Plaintiff to ERDCC, or if some of the handwritten notes were added later. *See id.* at 2, 4-6, 16-21. In June 2021, Plaintiff further supplemented his case with documents allegedly providing "proof of [the] cruel and unusual punishment & violation of [his] due process." Doc. [7] at 1. Many of the documents included in the supplements are difficult, if not impossible, to read. *See* Docs. [5],[7].

Based on the supplements, it appears that Plaintiff's complaint is based on a June 2020 physical altercation with Defendant correctional officers which resulted in Plaintiff receiving conduct violations and ultimately, administrative segregation placement. Doc. [5] at 4; Doc. [7] at 1-3, 13. According to Defendants Horbin and Robinson's Missouri Department of Corrections

---

[1] It is not clear if Plaintiff's finger was injured in the June 2020 altercation with defendants or if it was injured when it got caught in a cell food port in October 2020. *See* Doc. [7-1] at 4. Plaintiff included a copy of the accident report from the October 2020 food port injury, but it is unclear how this incident is related to named defendants.

[2] *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes").

("MDOC") Conduct Violation Reports, Plaintiff "became argumentative" with them when inmates were returning to their cells on June 8, 2020, after recreation and evening med pass. Doc. [7-1] at 1-2. Plaintiff refused "multiple verbal directives" to report to a specific housing location and then he refused "verbal directives to submit to wrist restraints." *Id.* When Defendant Robinson attempted to use a "soft empty hand escort" to take Plaintiff to where he was supposed to be, Plaintiff turned toward Robinson and drew his arm back with a closed fist. *Id.* at 2. Robinson sprayed Plaintiff with pepper spray in the face. Plaintiff struck Defendant Horbin "with a closed fist repeatedly" and Defendant Robinson "with a closed fist to [his] facial area." *Id.* at 1-2. Horbin and Robinson tried to regain control of Plaintiff by placing him against a wall but Plaintiff continued to be "combative" and put Robinson in a headlock and choked him. *Id.* at 2-3. The altercation required Defendants to seek outside medical treatment. *Id.* at 1, 3, 19. Following this incident, a MDOC committee assigned Plaintiff to administrative segregation based on his receipt of seven conduct violations in the prior six months and twelve violations in the prior year. *Id.* at 13, 17.

Plaintiff does not deny that he responded physically to Defendants Robinson and Horbin. According to one of the violation reports, Plaintiff's response when he was interviewed about the June 2020 incident was: "They beat my a** too." Doc. [7-1] at 2. According to Plaintiff, he feared for his life and "defended" himself "after being verbally and physically assaulted." Doc. [5] at 5. Plaintiff states that he tried "to submit and was continuously attacked by both officers." *Id.* After he was "away from the assault," Plaintiff "once again attempted to be restrained by the proper authority's" by lying face down and putting his hands behind his back. *Id.* However, despite this positioning, Plaintiff asserts that he was "once again assaulted by multiple staff" even though he "was not at all a threat." *Id.* Plaintiff states "officer LaRue fractured [his] ankle by shoving [his] legs into [his] back;" however, "it was then [Plaintiff] fought back once more in [an] attempt to

preserve [his] life." *Id.* Plaintiff alleges that CO defendants "failed to protect an offender or to report offender abuse." *Id.* at 6.

Following the incident, Plaintiff repeatedly protested that the altercation resulted in a "2.1 Assault" conduct violation for causing "serious injury to another" when "no one was seriously injured." Doc. [7-1] at 1-3, 17; Doc. [5] at 4. Plaintiff argues that this classification of his conduct was inappropriate because nothing "grave, critical, or life threatening" occurred, like a "stabbing, hospitalization, broken bone" or death. *Id.* He argues that because there was no "major injury" to Defendants, his Fourteenth and Eighth Amendment rights have been violated and that Defendants "clearly falsified state documents." *Id.*

Plaintiff also asserts that he has been denied appropriate medical care and medication, alleging that multiple medical issues have "gone un-attended." Doc. [5] at 6, 20. According to attached exhibits, Plaintiff filed a grievance concerning medical care after the June 2020 physical altercation with Defendants. *See id.* at 13. Based on the ERDCC response to that grievance, Plaintiff was seen by a nurse after the incident and refused a bag of ice for his facial swelling. *Id.* at 14. On the day after the incident, Plaintiff was seen by an optometrist and a dentist who both provided further plans for medical treatment. *Id.* Currently, Plaintiff seeks "gabapentin 600" for treatment of chronic pain for his chronic migraines. *Id.* at 6.

Furthermore, Plaintiff alleges Defendants have continued to harass him and take retaliatory actions against him. Doc. [5] at 9-10, 16. Plaintiff alleges Defendant Horbin verbally insults him, calls him names, and makes it known that she doesn't like him. *Id.* at 16. Plaintiff further alleges that Defendant Robinson forced him to get off the phone and was verbally "irate and belligerent" with him. *Id.* at 17. At one point, Plaintiff indicates that these retaliatory actions are a result of his filing a 42 U.S.C. § 1983 action against Defendants. *See id.* at 9 (stating "I have a 1983 statute against CO Horbin"). However, he makes this allegation in a document dated November 2020

and this case was not filed until March 2021. A search of this Court's records reveals no prior § 1983 lawsuit filed by Plaintiff against the named defendants.[3]

**Discussion**

Based on a liberal construction of the allegations of Plaintiff's self-represented complaint, this case will be dismissed for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B). Plaintiff's allegations are not sufficient to state a claim of excessive force or failure to protect against any of the Defendants. In addition, although Plaintiff claims that he has received deliberately indifferent medical care, none of the named Defendants are responsible for providing medical care to inmates at ERDCC. Finally, Plaintiff's allegations that Defendants have verbally harassed him and forged state documents, do not adequately state a violation of a right secured by the Constitution or laws of the United States, as required for a 42 U.S.C. § 1983 claim.

"[Correctional] Officers may reasonably use force in a good-faith effort to maintain or restore discipline but may not apply force maliciously and sadistically to cause harm." *Johnson v. Blaukat*, 453 F.3d 1108, 1112 (8th Cir. 2006) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)) (internal quotation marks omitted). "Because the use of force is sometimes required in prison settings, guards are liable only if they are completely unjustified in using force, i.e., they are using it maliciously and sadistically." *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008) (citing *Hudson*, 503 U.S. at 9). The test for reasonableness or the good-faith application of force depends on the following:

> whether there was an objective need for force, the relationship between any such need and the amount of force used, the threat reasonably perceived by the

---

[3] Plaintiff included additional documents that will not be considered by the Court because they appear to have no relation to the named defendants or the incident at issue here. *See* Doc. [7-1] at 5-7 (MDOC Offender Statements in which Plaintiff complains about various non-defendant ERDCC staff members violating his constitutional rights); at 11 (Conduct Violation Report completed by non-defendant correctional officer about Plaintiff refusing to remove his hand from the food port); at 12 (housing property list); at 15 (complaint about missing toothbrush and insects in his cell).

>correctional officers, any efforts by the officers to temper the severity of their
>forceful response, and the extent of the inmate's injury.

*Treats v. Morgan*, 308 F.3d 868, 872 (8th Cir. 2002) (citing *Hudson*, 503 U.S. at 7).

Here, Plaintiff does not deny that he refused to comply with multiple verbal directives from Defendants Horbin and Robinson to return to his housing unit and then to submit to wrist restraints. Once force was applied by these officers, Plaintiff admits to physically fighting back and resisting restraint multiple times. Plaintiff accuses Defendant LaRue of injuring his ankle when LaRue and multiple other officers came to the assistance of Horbin and Robinson.

The facts indicate that Defendants were compelling compliance with prison regulations in a reasonable use of force to maintain and restore discipline. *See Hickey v. Reeder*, 12 F.3d 754, 759 (8th Cir. 1993) ("There is no question that prison officials may compel compliance with legitimate prison regulations.); *Stenzel v. Ellis*, 916 F.2d 423, 426 (8th Cir. 1990) (holding that inmates refusal to comply with a legitimate jail security regulation constitutes a disturbance that poses a security risk to the safety of inmates and prison staff). Clearly, there was an objective need for force because Plaintiff admits to physically resisting the officers. However, there is no evidence here of malicious or sadistic use of force. Furthermore, there is no suggestion that the amount of pepper spray used to restrain Plaintiff was excessive. *See Jones v. Shields*, 207 F.3d 491 (8th Cir. 2000) (finding no excessive force when a limited application of pepper spray is used to control a recalcitrant inmate). Based on the facts alleged, Plaintiff fails to state a valid claim of excessive force against the Defendants.

Plaintiff also appears to be attempting to allege a failure-to-protect claim against Defendants. A prisoner may assert an excessive-use-of-force claim against a correctional officer who knew or had reason to know another officer was using excessive force, and who had the opportunity to intervene to prevent the excessive use of force by his fellow correctional officer, but failed to do so. *Livers v. Schenck*, 700 F.3d 340, 360 (8th Cir. 2012); *Putman v. Gerloff*, 639

F.2d 415, 423 (8th Cir. 1981). The question is whether the officer's inaction amounts to deliberate indifference to the inmate's health and safety. *Buckner v. Hollins*, 983 F.2d 119, 122 (8th Cir. 1993).

In this case, Plaintiff fails to adequately assert an excessive force claim against any named defendant so any failure-to-intervene claim also fails. No Defendant knew or had reason to know that another officer was using excessive force on Plaintiff. "A defendant cannot be held liable for failing to intervene to protect a prisoner if there was no excessive force to protect him from." *Johnson v. Blaukat*, 453 F.3d 1108, 1112 (8th Cir. 2006) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)) (internal quotation marks omitted). In this case, the Defendants were using reasonable force to restore and maintain discipline.

Plaintiff also asserts that he has received inadequate medical care at ERDCC. A jail official's intentional denial of or delayed access to medical care for a prisoner's serious injury constitutes unnecessary and wanton infliction of pain, giving rise to a claim of deliberate indifference to that prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). To prevail on an Eighth Amendment claim of deliberate indifference, a plaintiff must prove that he suffered from an objectively serious medical need, and that prison officials actually knew of and deliberately disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997) (internal quotations and citation omitted).

The only specific medical denial that Plaintiff asserts relates to pain management. *See* Doc. [1] at 4 ("Medical has done nothing to relieve me of my pain."). In one of the supplements,

Plaintiff seeks the pain medication Gabapentin 600. Doc. [5] at 6. Still, it is not clear from the record if Plaintiff has requested this specific medication from ERDCC medical staff, and been denied, or not. Regardless, Plaintiff has no right to receipt of a specific medication. *See Johnson v. Leonard*, 929 F.3d 569, 576 (8th Cir. 2019) (A prisoner's disagreement with medical staff's decision to offer him over-the-counter medications, rather than prescription medication, does not constitute deliberate indifference); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) ("[I]nmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment.").

Irrespective of whether Plaintiff's request for pain medication was denied by ERDCC medical staff, none of the Defendants in this matter are responsible for ERDCC inmate medical care – they are all correctional officers. "Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (to be cognizable under § 1983, a claim must allege that the defendant was personally involved in or directly responsible for the incidents that deprived the plaintiff of his constitutional rights). Because the Defendants were not personally involved in or directly responsible for Plaintiff's medical care, they are not liable under § 1983 for any deliberate indifference. Plaintiff's pleadings fail to state a claim of deliberately indifferent medical care against any of the Defendants.

Plaintiff also asserts Defendants Horbin and Robinson verbally harassed him. Generally, allegations of mere verbal threats do not state a § 1983 claim. *Turner v. Mull*, 784 F.3d 485, 492 (8th Cir. 2015). This is because the Constitution does not guard against all intrusions on one's peace of mind. *King v. Olmsted Cty.*, 117 F.3d 1065, 1067 (8th Cir. 1997). Typically, fear or emotional injury resulting solely from idle threats or verbal harassment is insufficient to constitute the violation of an identified liberty interest. *Id.* Because Plaintiff makes only general allegations

of verbal threats and harassment by Defendants Horbin and Robinson, he fails to state a sufficient claim under § 1983.

Finally, Plaintiff argues that Defendants incorrectly classified the June 2020 altercation as an "assault" on a MDOC Conduct Violation Report, thereby falsifying state documents and violating his rights. This claim relates to classification of an action based on a prison regulation. It is well established that there is no federal constitutional liberty interest in having state officers follow state law or having prison officials follow prison regulations. *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (*citing Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996)); *see also Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997) (failure to follow prison policy is not basis for § 1983 liability). Plaintiff's misclassification assertion is not enough to state a constitutional violation against any Defendant under § 1983.

For all reasons discussed above, Plaintiff fails to adequately allege any claim under 42 U.S.C. § 1983 against the Defendants in this matter. As such, this case will be dismissed for failure to state a claim, and Plaintiff's motion for appointment of counsel will be denied as moot.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Proceed *in forma pauperis* Doc. [4] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Plaintiff shall pay an initial filing fee of $3.03 within **thirty (30) days** of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that the Clerk shall **not** issue process or cause process to issue upon the complaint because the complaint fails to state a claim upon which relief can be granted. Plaintiff's claims against defendants are **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Appointment of Counsel Doc. [2] is **DENIED as moot**.

**IT IS HEREBY CERTIFIED** that an appeal from this dismissal would not be taken in good faith.

An Order of Dismissal will accompany this Memorandum and Order.

Dated this 21st day of June, 2021.

MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE